IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WALLACE R. BROWN III, | ) | CIVIL NO. 08-00470 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT |
| | ) | |
| STATE OF HAWAII, | ) | |
| DEPARTMENT OF PUBLIC | ) | |
| SAFETY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Wallace R. Brown III ("Plaintiff" or "Brown"), a correctional officer, asserts that his employer, the State of Hawaii, Department of Public Safety ("Defendant" or the "Department"), discriminated against him based upon race and retaliated against him for reporting discrimination and filing complaints with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

Currently before the court is Defendant's Motion for Summary Judgment.  Based on the following, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims.

## II.  BACKGROUND

### A.    Factual Background

Brown, an African-American male, claims that beginning in November 2002 the Department discriminated against him based upon his race and later retaliated against him for filing complaints with the HCRC and the EEOC. *See* Brown Decl. ¶¶ 3, 10-13, 16, 99, 103.

In July 1987, the Department hired Brown to work as an adult correctional officer at the Oahu Community Correctional Center ("OCCC").  *Id.* ¶ 5.  In March 2001, Brown was transferred to the Halawa Correctional Facility ("Halawa").  *Id.* ¶ 7.  By September 2002, Brown rose to the rank of Captain.  *Id.* ¶ 8.  Brown received successful performance evaluations throughout his employment with the Department.  *Id.* ¶ 9; Def.'s Ex. 12.

#### 1.    *Brown's Internal Complaints*

Brown asserts that, starting in 2002, he filed numerous written complaints with the Department reporting insubordination, intimidation, and other violations of the Department's Standards of Conduct and Hawaii law, and that his

2

meritorious complaints were ignored, not investigated, and/or not properly redressed while the Department responded favorably to complaints made by non-African American supervisors.  Brown Decl. ¶¶ 10-12; *see also* Pl.'s Exs. E-F, H-X, Z-MM, OO-XX, AAA-FFF (Brown's written complaints).[1]  Brown claims that by failing to conduct investigations of his written complaints, the Department created an atmosphere of disrespect that degraded his authority as a Captain causing subordinate Lieutenants, Sergeants, and others to openly disrespect and challenge his supervisory authority.  Brown Decl. ¶ 12; *see also* Pl.'s Ex. HHH.

As a result, in 2004, Brown alleges that the quality of his work environment declined after he was forced to participate in the mediation of a "workplace/violence insubordination case" that he reported.  Pl.'s Ex. HHH, at 140-41.

## 2. *"Operation Mandingo"*

On March 28, 2007, Sergeant Melvin Kiaaina ("Sgt. Kiaaina") was directed to conduct a security operation to look for fresh gang-related tattoo markings.  Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 185-86.  Sgt. Kiaaina named the security operation -- requiring all Halawa inmates in block 3A1 to strip for a

---

[1]  Plaintiff provides fifty-three specific examples of complaints that he claims were not properly addressed from November 14, 2002 to May 11, 2007.  Brown Decl. ¶ 10(a)-(aaa); *see also* Pl.'s Exs. E-F, H-X, Z-MM, OO-XX, AAA-FFF.

tattoo search -- "Operation Mandingo."  Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at

185-86; Def.'s Ex. 4.  When Brown received the written incident report describing

"Operation Mandingo," he was offended because he believed that the term

"Mandingo" was "clearly a black slavery reference from the 1970's movie

'Roots'" and that Sgt. Kiaaina intentionally chose that term because he knew

Brown would see the report.  Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 185; *see*

*also* Def.'s Ex. 4 (noting the term "Operation Mandingo" offended him because he

believed it referred to African Americans and slavery).

Sgt. Kiaaina, however, asserts that he chose the term "Mandingo" in

jest and "because that was how he felt at the time due to a shortage of staff and that

he and his subordinates were tired."  Def.'s Exs. 5-6.[2]  Sgt. Kiaaina claims that he

did not mean the term to be derogatory.  *Id.*  After Sgt. Kiaaina learned that Brown

was offended, he apologized to Brown and explained to him that he did not mean

to offend anyone.  Def.'s Ex. 6, at 6-2.

The next day, Brown informed Halawa Warden Clayton Frank

("Warden Frank") about his objection to the use of the term "Mandingo."  Brown

Decl. ¶ 10(ww); Frank Decl. ¶ 4; Def.'s Ex. 4.  According to Brown, Warden

---

[2] Sgt. Kiaaina also stated that he uses the term "Mandingo" to refer to himself when he "deals with the ladies."  Def.'s Ex. 5.

4

Frank refused to discipline Sgt. Kiaaina himself, and instead instructed Brown to send Sgt. Kiaaina a letter of reprimand stating that what Sgt. Kiaaina wrote in his report was inappropriate.[3]  Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 185; Def.'s Exs. 4-5.  Warden Frank maintains that he told Brown to personally inform Sgt. Kiaaina that he was offended because, as the watch commander and a Captain, Brown had a responsibility to personally inform his subordinates about his expectations of their behavior and explain when any behavior is inappropriate. Frank Decl. ¶ 7; Def.'s Ex. 6, at 6-2-3.  Warden Frank, however, disputes that he told Brown to issue a reprimand to Sgt. Kiaaina.  Frank Decl. ¶ 8.

Brown was offended by Sgt. Kiaaina's use of the term "Operation Mandingo" and Warden Frank's "casual, uninterested response."  Def.'s Ex. 4.

### 3.    *Brown's Formal Charge of Racial Discrimination*

On April 10, 2007, Brown filed a Pre-Complaint Questionnaire with the HCRC (the "HCRC Questionnaire") against the Department alleging that he was discriminated against because of his race.  Pl.'s Ex. GGG; Def.'s Ex. 3.  In the HCRC Questionnaire under "discriminatory adverse actions," he described Sgt.

---

[3]  Brown also claims that Warden Frank said, "that's what you have to put up with when you're a supervisor."  Brown Decl. ¶ 10.

Kiaaina's naming of the March 28, 2007 security search for gang-related tattoos "Operation Mandingo" and attached a copy of the incident report. *See id.*

On August 30, 2007, Brown filed a formal charge ("formal charge") of racial discrimination against the Department simultaneously with the HCRC and the EEOC.[4]  Def.'s Ex. 1; Pl.'s Ex. Y.  Brown's formal charge states:

> On March 28, 2007, I was subjected to racial harassment in my position of Watch Commander . . . .
> . . .
> I believe that I was subjected to racial harassment because of my race (Black). . . .   My belief is based on the following:
>> On March 28, 2007, I was subjected to racial harassment by Sgt. Melvin Kiaaina.
>> A.  The harassment was of a visual nature and created a hostile and offensive working atmosphere.
>> B.  On or about March 29, 2007, I reported the racial harassment to Warden Clayton Frank. Warden Frank told me to write Sgt. Kiaaina a letter amounting to a Letter of Reprimand in violation of [OCCC] and the Department's policy.
>> C.  I believe that no corrective action was taken, as there was no prompt and thorough investigation of my complaint.
>> D.  I also believe that my employer's inaction has not deterred future racial harassment against me.

---

[4]  Brown signed the formal charge on August 28, 2007.  Def.'s Ex. 1; Pl.'s Ex. Y.  At this time, Brown worked at Halawa.  *Id.*

*Id.*

### 4.     *Plaintiff's Transfer, Promotion, and Reassignment as Captain*

On May 21, 2007, Brown requested to be detached from his current assignment at Halawa, in part, because "[t]he workplace environment ha[d] deteriorated over the past several years to the point of now being insufferable" because Brown's subordinates would not follow his orders.  Pl.'s Ex. HHH, at 140-142.[5]

As a result, on July 3, 2007, in a memo from Acting Warden Francis Sequeira, the Department temporarily reassigned Brown to the OCCC effective July 6, 2007.  Pl.'s Ex. III.

On January 23, 2008, OCCC Warden Nolan P. Espinda temporarily assigned Brown as the Community Based Administrator ("Administrator"), a position at the level of Corrections Supervisor II, after the former Administrator took over as temporary warden of the Waiawa Correctional Facility.  Brown Decl. ¶ 16; Frank Decl. ¶ 10.  On May 8, 2008, Plaintiff was removed as Administrator and reassigned to his previous position as Captain.  Brown Decl. ¶ 16.

---

[5]  Brown also requested a transfer to avoid retaliation due to his formal charge.  Pl.'s Ex. HHH, at 142.

Brown asserts that this reassignment was in retaliation for filing his formal charge of race discrimination with the HCRC. *Id.* ¶¶ 16, 103. The Department counters that Brown was reassigned as Captain (and removed as Administrator) because the Hawaii Government Employees Association (the "Union") filed an internal complaint alleging that Brown's temporary assignment violated the collective bargaining agreement. Frank Decl. ¶ 10; Def.'s Exs. 7-9. In the internal complaint, the Union requested that the Administrator position be filled by an employee who worked as a Corrections Supervisor (the position immediately below the class of the temporary assignment) pursuant to the collective bargaining agreement, and indicated that they were considering filing a former labor grievance on behalf of all Corrections Supervisors. Frank Decl. ¶¶ 11-12; Def.'s Exs. 7-9. After review of the internal complaint, Warden Frank determined that Captains (including Brown) and Correctional Supervisors were both eligible for the position of Administrator and ordered that Brown be removed from the position until the OCCC Warden could consider all eligible employees. Frank Decl. ¶ 13. Brown resumed his duties as Captain, and the Administrator position remained vacant. *Id.* ¶ 14. As a result of removing Brown from the temporary position of Administrator, the Union removed its appeal before the Merit Appeals Board and a formal labor grievance was never filed. *Id.*

The Department asserts that Brown retained his rank of Captain, and his compensation and employment benefits were never decreased. *Id.* ¶ 15. Brown counters that the reassignment from Administrator to Captain was a two-step demotion that caused him a loss of approximately $500.00 in monthly pay. Brown Decl. ¶ 98; Pl.'s Ex. YY.

### 5.  *Brown's Formal Charge of Retaliation*

On July 25, 2008, Brown simultaneously filed a formal charge of retaliation with the HCRC and EEOC. Pl.'s Ex. YY. Brown alleged that he was removed from his temporary assignment as Administrator and reassigned to a position as Captain, resulting in an approximately $500.00 monthly pay cut, in retaliation for filing a charge of race discrimination with the HCRC and EEOC on August 30, 2007. *Id.* Brown's formal retaliation charge states:

> A.  On August 30, 2007, I filed a race discrimination complaint with the HCRC[.] My complaint named former Warden Clayton Fraser as decision-maker.
> B.  On or about May 9, 2009, Nolan Espinda, Warden, told me that Mr. Frank, Director of the Department of Public Safety, instructed Mr. Espinda to remove me from the [temporary assignment position of Community Based Organizer]. Mr. Espinda said that Mr. Frank did not provide any reasons for the removal.
> C.  My performance as the [temporary Community Based Organizer] was satisfactory.

*Id.*

9

Brown received a right to sue letter from the EEOC on November 21, 2008.  Pl.'s Ex. LLL.

## B.    Procedural Background

Brown filed his Amended Complaint against the Department alleging four claims: (1) racial discrimination under Title VII and Hawaii Revised Statutes ("HRS") §§ 378-1, 378-2; (2) retaliation under Title VII and HRS §§ 378-1, 378-2; (3) IIED; and (4) breach of implied contract.[6]

Defendant filed its Motion for Summary Judgment on July 8, 2009. Plaintiff filed his Opposition on July 31, 2009.[7]  Defendants filed a Reply on August 6, 2009.  A hearing was held on August 17, 2009.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[6]  Although Plaintiff originally brought claims of discrimination and retaliation under Hawaii Revised Statutes § 378-1 and § 378-2 (counts I and II), intentional infliction of emotional distress (count III) and breach of implied contract (count IV) (collectively, the "state law claims"), Am. Compl. ¶¶ 32-36, the court dismissed the state law claims pursuant to stipulation on August 17, 2009.

[7]  Plaintiff filed his Opposition one day late.  *See* L.R. 7.4.  In their Reply, Defendant moves for the court to strike Plaintiff's Opposition.  The court DENIES Defendant's request to strike Plaintiff's Opposition.

to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir.2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  <u>ANALYSIS</u>

Defendant argues for summary judgment on Plaintiff's Title VII claims based on Plaintiff's failure to exhaust his administrative remedies, his failure to establish a prima facie case, and his failure to show that Defendant's non-retaliatory reason for his reassignment was pretextual.  For the foregoing reasons, summary judgment of Plaintiff's Title VII claims is warranted.

**A.      Exhaustion**

Defendant argues that Plaintiff has failed to exhaust his administrative remedies as to all but his discrimination claims related to the use of the term "Operation Mandingo" on March 28, 2007 and, therefore, the court lacks jurisdiction over any discrimination claim arising from the other events in the Amended Complaint.  The court agrees.

///

///

///

### 1.    *Legal framework*

To litigate a Title VII claim, a plaintiff must have exhausted his

administrative remedies by filing a charge with the EEOC or the appropriate state

agency.[8]  *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008);

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002); *see also*

*Vasquez v. County of L.A.*, 349 F.3d 634, 645-46 (9th Cir. 2003).

Under the exhaustion doctrine, "[a]llegations of discrimination not

included in the administrative charge 'may not be considered by a federal court

unless the new claims are like or reasonably related to the allegations contained in

the EEOC charge.'"  *B.K.B.*, 276 F.3d at 1100 (quoting *Green v. L.A. County*

*Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)); *Lyons v.*

---

[8]  It is unclear whether a claimant's failure to include allegations in his formal charge relates to the court's jurisdiction as to any new claims brought in a subsequent civil action, or is merely a condition precedent to suit.  *Compare Albano v. Schering-Plough Corp.*, 912 F.2d 384, 387 (9th Cir. 1990) ("It is well-settled that the failure to file an EEOC charge is not jurisdictional but is merely a condition precedent to suit."); *and Vinieratos v. U.S., Dep't of Air Force*, 939 F.2d 762, 768 n.5 (9th Cir. 1991) ("We do not recognize administrative exhaustion under Title VII as a *jurisdictional requirement* per se; we treat it as a legal question under the de novo standard because the issue is whether the plaintiff has satisfied a *statutory precondition* to suit."); *with Vasquez v. County of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003) ("To establish subject matter jurisdiction over his Title VII retaliation claim, Vasquez must have exhausted his administrative remedies by filing a timely charge with the EEOC."); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) ("Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite."); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (same); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (same).  Regardless, in this case the court need not determine whether exhaustion is jurisdictional or merely a precondition to suit.

*England*, 307 F.3d 1092, 1104 (9th Cir. 2002); *see also Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990) (stating that "[c]laims regarding incidents not listed in an EEOC charge may nevertheless be asserted in a civil action if they are like or reasonably related to the allegations in the EEOC charge" (citation and quotation signals omitted)).  Put slightly differently, the court may entertain "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge."  *See Vasquez*, 349 F.3d at 644.

The rationale behind this rule is that "Title VII does not require that the plaintiff separately exhaust additional claims that are 'so closely related [to the allegations made in the charge] that agency action would be redundant.'"  *B.K.B.*, 276 F.3d at 1102 (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1457 n.2 (9th Cir. 1990)).  Where the claims are so closely related, "'[t]o require a second 'filing' by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality.'"  *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir. 1984) (quoting *Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1320 (9th Cir. 1978)); *see also Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999) (stating that "forcing an employee to begin the administrative process anew after additional occurrences of

14

discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier") (quotation signals omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In comparison, "[w]here claims are *not* so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." *Brown*, 732 F.2d at 730.

In determining whether a plaintiff's claims are sufficiently "like or reasonably related to" the allegations in his administrative charge such that his claim is exhausted, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred" and whether "plaintiff's civil claims . . . are consistent with the plaintiff's original theory of the case." *See B.K.B.*, 276 F.3d at 1100.

The court applies this analysis to allegations not included in the original charge regardless of whether they stem from facts that arose before or after the filing of that charge. *See Sosa*, 920 F.2d at 1457 n.2 (9th Cir. 1990). A district court must construe the language of the charge to the EEOC or state agency "with utmost liberality[.]" *See B.K.B.*, 276 F.3d at 1100 (citation and quotation signals

15

omitted); *see also E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005) (stating the court has jurisdiction over defendants not named in the EEOC charge "where the EEOC or defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit.'") (citation omitted).

### 2.   *Application*

Plaintiff has failed to exhaust his remedies for all but the allegations regarding Sgt. Kiaaina's March 28, 2007 "Operation Mandingo."

Brown's formal charge asserts discrimination based on race[9] and describes the incident which occured on March 28 and 29, 2007 when Sgt. Kiaaina named a security operation "Mandingo" and reported being offended by the name of the operation to Warden Frank. *See* Def.'s Exs. 1, 3; Pl.'s Exs. Y, GGG.  In contrast, Brown's Amended Complaint asserts that from November 14, 2002 to May 11, 2007, he filed fifty-three internal complaints with the Department that were not addressed, investigated, and/or resolved in the same way that they would have been had they been reported by a non-African American supervisor. *See* Am. Compl. ¶ 14(a)-(aaa).  The thrust of Brown's Amended Complaint is that the

---

[9]  Plaintiff also filed a formal charge of retaliation, but Defendant does not claim that Plaintiff has failed to exhaust his administrative remedies as to his retaliation claim. *See* Def.'s Ex. 2; Pl.'s Ex. YY.  The court discusses that claim separately below.

Department treated him differently because of his race, which resulted in his subordinates disrespecting him and challenging his authority.  *See id.* ¶¶ 14-16. Construing his formal charge with the utmost liberality, the court finds that, apart from the allegations regarding "Operation Mandingo," Brown's Amended Complaint is not "like or reasonably related" to his formal charge.

Significant differences exist between Brown's formal charge and his Amended Complaint.  First, the two allege different types of discrimination -- that is, Brown's Amended Complaint makes allegations of long-term disparate treatment or hostile work environment while Brown's formal charge only sets forth a single incident of racial harassment.  In other words, the allegations in Brown's Amended Complaint "involve totally different kinds of allegedly improper conduct" than the allegations in the formal charge.  *See Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001).  Second, apart from one sub-paragraph mentioning "Operation Mandingo," none of the allegations in Brown's Amended Complaint mentions Sgt. Kiaaina or Warden Frank, but instead refer to other correctional officers not mentioned in the formal charge.[10]  Third, the events in the

---

[10]  In his Amended Complaint, Brown describes acts of insubordination and/or violations of the Department's Standards of Conduct or violations of Hawaii law by the following Department employees: Lori Santiago, Lieutenant ("Lt.") Shook, Sergeant ("Sgt.") Kamaka, Sgt. Andrade, Sgt. Hoomanawanui, Sgt. Watanabe, Sgt. Mielke, Lt. Robino, Officer Kaululaau, Sgt. Lee, Officer Tuatagaloa, Officer Hamlow, Officer Palau, Sgt. Johnson, Officer Feagai, Officer

(continued...)

Amended Complaint begin in 2002 and go on until 2007 -- a period of five years -- while the formal charge only refers to an incident that took place over a two-day period on March 28 and 29, 2007.[11]

As such, nothing in Brown's formal charge -- citing a single incident and referencing only two individuals -- would have lead to an investigation of the wholly separate allegations of five years of systematic, disparate treatment by multiple corrections officers alleged in his Amended Complaint.[12]  *See, e.g.*,

_____

[10](...continued)
Tabali, Officer Boon, Officer Kahele Koki, Officer Borges, Lt. Mata, Sgt. Lota, Officer Salanoa, Officer Padilla, Officer Aragon, Officer Ioane, Officer Garcia, Sgt. Hope, Lt. Antonio, Sgt. Kepa, Officer Estabilo, Officer Padila, Sgt. Barbadillo, and Lt. Leslie.  *See* Am. Compl. ¶ 14. Brown also names the following non-African American supervisors whose complaints were properly addressed -- Captain Hanford Hoomana, Captain Francis Hun, Captain Pete Aguon, Captain Leroy Kane, Captain Dallen Poleka, Captain Jerry Roberts, Captain Farrett VanWinkle, Captain Sopo Mao, Captain Dennis Corrigan, Acting Captain Lyle Antonio, Acting Captain Allan Robino, and Captain Dennis Bernard.  *Id.*  *None* of these individuals is mentioned in Brown's formal charge.

[11]  Further, the two events in the Amended Complaint that are closest in time to the "Operation Mandingo" incident reference wholly unrelated events.  On March 20, 2007, Brown reported that Officer Arturo Establilo was out of uniform while on duty, which Brown claims the Department failed to investigate "while investigating other incidents that were reported by non-African American supervisors, *see* Am. Compl. ¶ 14(vv), and on April 5, 2007, Brown reported that Officer Bradley Padila was insubordinate when he was not allowed to work overtime, which Brown claims the Department failed to investigate "while investigating other incidents that were reported by non-African American supervisors."  *Id.* ¶ 14(xx).

[12]  Although the court recognizes a bare thread of similarity between Plaintiff's allegations that the Department has ignored or otherwise failed to investigate his ongoing grievances and the claim that Warden Frank did not deal with the "Operation Mandingo" incident properly, given the vast differences between the Amended Complaint and the formal charge, Plaintiff has failed to demonstrate that the incidents in his Amended Complaint are sufficiently "like or reasonably related" to the formal charge such that his administrative remedies are exhausted.  *See B.K.B.*, 276 F.3d at 1100.

(continued...)

*Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637-38 (9th Cir. 2002) (finding teacher failed to exhaust where "[t]he factual allegations in Freeman's EEOC charge refer only to discriminatory conduct in relation to a specific election" and "[n]othing in the language of the charge itself would have resulted in an EEOC investigation encompassing alleged discrimination in the context of teaching assignments, class size, and the handling of the dispute over the eight-period work day"); *Rodriguez*, 265 F.3d at 897 (concluding that Rodriguez' "charge of discrimination against Mexican-Americans would not reasonably trigger an investigation on the ground of disability"); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050-51 (9th Cir. 1987) (holding that plaintiff had not exhausted her sex and age discrimination claims by filing charge alleging only national origin discrimination).[13]

  Finally, Plaintiff provides no explanation how or why his allegations are related to his formal charge. In his Opposition, Plaintiff merely includes the

---

[12](...continued)
  Further, Plaintiff's statement that he "argues both disparate treatment and hostile work environment legal theories" does not alter the court's determination that the formal charge would not have led to an investigation of the types of allegations in Plaintiff's Amended Complaint. *See* Pl.'s Opp'n 22.

  [13] Because neither party presented evidence regarding the scope of the HCRC and/or EEOC's actual investigation, the court analyzes whether the new allegations in Brown's Amended Complaint would fall within the scope of an HCRC / EEOC investigation which could reasonably be expected to grow from the formal charge. *See B.K.B.*, 276 F.3d at 1100; *Farmer Bros.*, 31 F.3d at 899.

heading, "Plaintiff exhausted administrative rqmts, [sic] like or related claims, ongoing violation," but fails to provide any analysis setting forth *how* the claims in his Amended Complaint are indeed "like or related" to the allegations in his formal charge.[14]

Thus, Plaintiff has failed to exhaust his administrative remedies as to the allegations in subparagraphs ¶ 14(a)-(vv), (xx)-(aaa) of his Amended Complaint. As to these allegations, the court GRANTS Defendant's Motion for Summary Judgment.[15]

## B.    Merits of Plaintiff's Title VII Claim*s*

The Department argues, and the court agrees, that Brown has failed to establish a prima facie case of either discrimination or retaliation as a matter of law.

---

[14] Plaintiff's reliance on the continuing violation theory does not survive *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In any event, even if the continuing violation theory remained viable, it would provide Plaintiff no relief. "While it is true that the continuing violation theory 'draws within the ambit of a Title VII claim all conduct occurring before and after the filing of an EEOC charge,' that conduct must still be like or reasonably related to the events charged." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 639 (9th Cir. 2002) (citation omitted). As such, Brown's failure to link his formal charge as "like or reasonably related to" the allegations in his Amended Complaint is fatal to his Title VII claim.

[15] During the August 17, 2009 hearing, Plaintiff conceded that the letter sent from his counsel to William Hoshijo at the HCRC on June 30, 2008, *see* Pl.'s Ex. NNN, has no effect on the exhaustion of his remedies because it is barred by the three-hundred day statute of limitations in 42 U.S.C. § 2000e-5(e).

### 1.    *The* McDonnell Douglas *Burden-Shifting Framework*

Under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework, Plaintiff has the initial burden to establish a prima facie case of racial discrimination and retaliation.  *Surrell*, 518 F.3d at 1105; *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).[16]  "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).

After a plaintiff establishes a prima facie showing of discrimination or retaliation, the burden of production under the *McDonnell Douglas* framework shifts to the defendants to forward a legitimate -- which is to say non-discriminatory or non-retaliatory -- reason for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the defendant does so, the burden shifts back to the plaintiff to show that the given reason is merely pretext for a discriminatory or retaliatory motive.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *see also Nilsson v. City of Mesa*, 503 F.3d 947, 954 (9th Cir. 2007)

---

[16]  At the August 17, 2009 hearing, the parties agreed that the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework applies.

(stating that plaintiff "bears the ultimate burden of submitting evidence indicating that the [defendant's] proffered reason is merely a pretext for a retaliatory motive." (citation and quotation signals omitted)).

To show pretext, a plaintiff must do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). "A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641; *see also Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory [or retaliatory] statements or actions by the employer." *Coghlan*, 349 F.3d at 1095. Circumstantial evidence requires an additional inferential step to demonstrate retaliation. *Id.*

When the evidence of pretext is direct, "very little evidence [is required] to survive summary judgment[.]" *E.E.O.C. v. Boeing Co.*, --- F.3d ---, 2009 WL 2501837, at *4 (9th Cir. Aug. 18, 2009) (citation and quotation signals omitted). "'But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'" *Id.* (quoting *Coghlan*, 413 F.3d at 1095); *see also Mondero v. Salt*

22

*River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).

**2.      Application: Plaintiff's  Discrimination Claim as to the "Operation Mandingo" Incident**

Plaintiff has failed to make a prima facie case of discrimination under Title VII based upon the use of the term "Operation Mandingo" under either a disparate treatment or hostile work environment theory.[17]

*a.      Disparate treatment*

To establish a prima facie case of discrimination under Title VII for disparate treatment, a plaintiff must show that "(1) []he belongs to a protected class; (2) []he was qualified for [his] position; (3) []he was subject to an adverse employment action; and (4) similarly situated individuals outside [his] protected class were treated more favorably."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'"  *Id.* (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

---

[17]  Because Plaintiff has failed to exhaust his remedies as to all but the "Operation Mandingo" incident, the court only considers the unexhausted incidents as "background" to Brown's properly exhausted claim.  *See Morgan*, 536 U.S. at 122.  Further, although *Morgan* applies a broader rule to hostile work environment claims, "that conduct must still be like or reasonably related to the events charged" to survive summary judgment.  *Freeman*, 291 F.3d at 639.

Plaintiff provides *no* explanation of how, if at all, this incident affected his employment -- that is, Plaintiff does not provide evidence or even assert that Sgt. Kiaaina's naming the March 28, 2007 security operation "Mandingo" affected his compensation or the conditions, terms, or privileges of his employment.  To the contrary, Brown maintains that since his employment began with the Department in 1987, he has been promoted, received pay increases, and consistently received favorable annual performance evaluations.  Brown Decl. ¶¶ 28, 92.[18]

Instead, Plaintiff merely asserts that he was offended by Sgt. Kiaaina's use of the term "Operation Mandingo" in the incident report and Warden Frank's "casual, uninterested response."  *See* Def.'s Ex. 4; Pl.'s Ex. GGG, at 185.  This is wholly insufficient to establish an adverse employment action.

Because Plaintiff has failed to meet his burden to establish a genuine issue of material fact that he suffered a materially adverse employment action, the

---

[18]  Plaintiff's argument that he suffered an adverse action because the Department ignored his internal complaints from 2002 to 2007 making him a "supervisor without the power to supervise" is without merit.  *See* Pl.'s Opp'n 23-24.  Even considering Brown's allegations that the Department ignored his complaints from 2002 to 2007 as background evidence, *see Morgan*, 536 U.S. at 113, Plaintiff has provided no evidence that the "Operation Mandingo" incident -- *the only event upon which Plaintiff has exhausted his remedies* -- constituted an adverse employment action.

court GRANTS Defendant's Motion on Plaintiff's Title VII disparate treatment
discrimination claim.

        b.     *Hostile work environment*

     "To prevail on a hostile workplace claim premised on . . . race . . ., a
plaintiff must show: (1) that he was subjected to verbal or physical conduct of a
racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was
sufficiently severe or pervasive to alter the conditions of the plaintiff['s]
employment and create an abusive work environment." *Vasquez*, 349 F.3d at
642.[19]

     To establish the third prong, "[a] plaintiff must show that the work
environment was both subjectively and objectively hostile." *McGinest v. GTE
Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).  In determining whether conduct
was sufficiently severe or pervasive, the court examines "all the circumstances,
including the frequency of the discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance." *Clark County
Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (per curiam).  "The required

---

    [19] "Because the elements to prove a hostile work environment are the same for both
racial harassment and sexual harassment, cases analyzing both types of harassment are relevant
to [the court's] analysis." *Vasquez*, 349 F.3d at 642.

level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *McGinest*, 360 F.3d at 1113 (citation and quotation signals omitted). While "[i]t is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay in [his] position," to "[s]imply caus[e] an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the "Operation Mandingo" incident consists of: (1) Sgt. Kiaaina naming a search operation that required certain inmates to strip so that they could be examined for fresh gang-related tattoos "Mandingo," Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 185-86; Def.'s Ex. 4; (2) naming the operation "Mandingo" on the report knowing that Brown would receive it, Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 185; and (3) Warden Frank refusing to reprimand Sgt. Kiaaina and instead making Brown reprimand Sgt. Kiaaina on his own when Brown reported the incident to him. Pl.'s Ex. GGG, 183-87.[20] These events offended Brown because the term refers to African Americans and slavery. Pl.'s Ex. GGG, at 185; Def.'s Ex. 4.

---

[20] Viewing the facts in Brown's favor, Warden Frank also said "that's what you have to put up with when you're a supervisor." *See* Brown Decl. ¶ 10(ww); Pl.'s Ex. GGG, at 183.

Considering the totality of the circumstances, these events are not severe or persuasive enough to rise to the level of a hostile work environment. This single incident occurred over two short days and was neither physically threatening nor humiliating.  (In fact, the offensive language was placed in a written report and there is no evidence it was published to any of Brown's co-workers.)  Further, Brown has put forth no evidence that this incident -- involving one offensive term, submitted in writing on one occasion -- interfered with Brown's work performance, polluted his workplace, or made it more difficult to do his job.[21]  Instead, Brown merely reports that he was offended, but "[s]imply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII."  *See McGinest*, 360 F.3d at 1113.[22]

Further, in comparison to actionable hostile work environment cases, it is clear that the "Operation Mandingo" incident is not severe or pervasive enough to violate Title VII.  *See, e.g.*, *id.* at 1113 (finding plaintiff put forth sufficient facts of severe and pervasive abusive work environment to overcome

---

[21]  In fact, since Brown's employment began with the Department in 1987, he has been promoted, received pay increases, and received favorable annual performance evaluations. Brown Decl. ¶¶ 28, 92.

[22]  Even considering the "Operation Mandingo" incident against the background of the Department refusing to investigate Brown's written complaints from 2002 to 2007, *see* Brown Decl. ¶¶ 10-12, Brown has failed to demonstrate "sufficiently severe or pervasive" conditions that rise to the level of a hostile or abusive work environment.  *See Vasquez*, 349 F.3d at 642-44.

summary judgment motion where, among other things, he was forced work in dangerous situations resulting in a serious car accident, barraged with insults, and prevented from collecting overtime for two years due to his race); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872-73 (9th Cir. 2001) (finding that "an unrelenting barrage of verbal abuse" and being "habitually called sexually derogatory names, [being] referred to . . . [as] the female gender, and [being] taunted . . . for behaving like a woman" was sufficiently severe and pervasive to alter the terms and conditions of employment); *Galdamez v. Potter*, 415 F.3d 1015, 1023-24 (9th Cir. 2005) (finding evidence that plaintiff received hostile comments based on her race over the course of three years, including threats to her life and safety, was sufficiently severe or pervasive to support jury instruction on hostile work environment based upon national origin); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (finding Korean plaintiff presented genuine issue of material fact as to whether hostile work environment existed based upon national origin where employer verbally and *physically* abused him).

Because, viewing the facts in Brown's favor, he has failed to meet his burden to establish a prima facie case of hostile workplace discrimination under Title VII as a matter of law, the court GRANTS Defendant's Motion for Summary Judgment on this claim.

### 3.   *Application: Plaintiff's Relation Claim*

Plaintiff contends that Defendant retaliated against him under Title VII by removing him from his temporary position as Administrator and reassigning him as Captain.  Defendant argues for summary judgment on Plaintiff's retaliation claim because (1) he has failed to show causation, a necessary element of his prima facie case of retaliation, and (2) he has not demonstrated that the legitimate, non-retaliatory reason proffered by the Department was pretextual.  For the foregoing reasons, the court finds that Plaintiff's retaliation claim fails as a matter of law.

### a.   *Prima facie case of retaliation*

To make a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant took an adverse action against him; and (3) there was a causal link between his involvement in the protected activity and defendant's adverse personnel action.  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest*, 360 F.3d at 1124.  To establish an adverse personnel action sufficient to support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and

quotation signals omitted).  To establish causation, a plaintiff must show by a preponderance of the evidence that, but for engaging in the protected activity, the defendant would not have engaged in the adverse action.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Causation may "be inferred from timing alone where an adverse employment action follows on the heels of protected activity" -- in other words, where there is no other evidence of causation "the termination must have occurred fairly soon after the employee's protected expression" in order to support an inference of retaliatory motive.  *Id.* (citation and quotation signals omitted) (finding 18-month lapse too long to "by itself" give rise to an inference of causation; citing cases with approval that found four, five, and eight month gaps too long to establish temporal proximity under Title VII); *see also Breeden*, 532 U.S. at 273-74 (same for three and four months).

The first and second prongs of Plaintiff's prima facie case of retaliation are not in issue -- Brown engaged in protected activity and his reassignment constitutes an adverse action (*i.e.*, a reasonable employee might have been dissuaded from reporting discrimination had he known he would have been reassigned from Administrator to Captain).  Thus, the court turns to causation.

Viewing the evidence in the light most favorable to Plaintiff, he has failed to raise a genuine issue of material fact as to whether there is a causal link between his formal charge of discrimination and his reassignment as Captain.

Plaintiff filed his HCRC Questionnaire on April 10, 2007 and filed his formal charge of discrimination on August 30, 2007.  Pl.'s Exs. Y, GGG; Def.'s Exs. 1, 3.  On January 23, 2008 (after he filed his formal charge), he was temporarily promoted to the position of Administrator.  Brown Decl. ¶ 16; Frank Decl. ¶ 10.  On May 8 or 9, 2008, Brown was removed from his temporary assignment as Administrator and reassigned as Captain.  Decl. Brown ¶ 16; Pl.'s Ex. YY; Def.'s Ex. 2.  Plaintiff provides no explanation or analysis of causation beyond timing, and instead merely states that he filed a report of race discrimination and was subsequently reassigned from Administrator to his previous position as Captain.  *See* Pl.'s Opp'n 29-30.  Because Brown was reassigned over eight months after Plaintiff filed his formal charge of discrimination and because Plaintiff has put forward *no* other evidence of a causal link, the third prong of Brown's retaliation claim fails.  Put slightly differently, Brown has failed to show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his reassignment] and that but for such activity [he] would

31

not have been [reassigned]." *See Villiarimo*, 281 F.3d at 1065 (citation and quotation signals omitted).

        *b.*    *Pretext*

        Additionally, even if Brown had established a prima facie case, he failed to meet his burden to show that the Department's proffered, legitimate reason for his reassignment -- *i.e.*, that Brown was reassigned because the Union filed an internal complaint, *see* Frank Decl. ¶ 10; Def.'s Exs. 7-9 -- is mere pretext. While Plaintiff baldly declares that Warden Frank reassigned him "because [Brown] objected to disparate treatment and filed the HCRC complaint," *see* Pl.'s Decl. ¶ 16, Brown must do more than merely deny the credibility of Defendant's proffered reason. *See Schuler*, 793 F.2d at 1011. Instead, Brown must either demonstrate "pretext directly, by showing that [retaliation] more likely motivated [Warden Frank], or indirectly, by showing that [Warden Frank's] explanation is unworthy of credence." *See Vasquez*, 349 F.3d at 641. Plaintiff has done neither.

        As such, he has failed to meet his burden. *See Nilsson*, 503 F.3d at 954 ("[Plaintiff] bears the ultimate burden of submitting evidence indicating that the [Department's] proffered reason is merely a pretext for a retaliatory motive.") (citation and quotation signals omitted); *see also Cornwell*, 439 F.3d at 1028 (stating that when the employer provides evidence showing that it undertook the

32

challenged employment action for a "legitimate nondiscriminatory reason" then the presumption of discrimination "drops out of the picture and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed.R.Civ.P. 56(c)" (quotation signals omitted)).

Because Brown has not established a prima facie case of retaliation and because he has not presented any evidence that the Department's legitimate, non-retaliatory reason for his reassignment is pretextual, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim.

## V.  <u>CONCLUSION</u>

For the reasons stated above, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 28, 2009.



   /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Brown v. State of Hawaii*, Civ. No. 08-00470 JMS/LEK; Order Granting Defendant's Motion for Summary Judgment